## Schwartz's Estate

*Barnet Lieberman*, for petitioner.
*Ralph S. Croskey*, for respondent.

BOLGER, J., April 14, 1939.—Charles Schwartz, the testator, died January 14, 1906, leaving to survive him his widow and four children, one of whom was petitioner, then a minor. The widow, Theresa Schwartz, who is the respondent here, and Fred H. Hahn duly qualified as executors upon probate of the will, following which she filed her election to take against it.

The will was informally written, but plainly expressed the intention of testator that his widow should receive the income of the estate during widowhood or life, and that upon her remarriage or death the estate should be divided in the proportions of one third to his daughters Emma and Maria, and two thirds to his sons William and Charles.

The widow's election to take against the will altered the devolution of the estate, the widow receiving, inter

alia, a one-third interest for life in the real estate, and the remainder interests of the children accelerating into an immediate vested interest, and, as to two thirds, in possession. The adjudication of the executors' account on March 6, 1907, awarded a two-ninths interest amounting to $1,655.90 in the personalty to petitioner to be paid to his guardian when appointed. This account contained no items of real estate and consequently the adjudication made no reference thereto.

Petitioner's sister was subsequently appointed guardian of petitioner's estate, but the executors failed to distribute to her anything except the sum of $302.09 on March 29, 1913, which sum was placed in a savings account and, with accrued interest thereon, was paid to the minor when he attained his majority in 1917.

Frederick H. Hahn, coexecutor with the widow, died September 12, 1912.

It is important to note that the widow respondent failed to file a bond to protect the children's interest after her death in the proceeds of the real estate and that no trustee was appointed to administer the proceeds upon its being sold.

No explanation ever was made to petitioner by his mother, or by his guardian, as to the extent of his interest in his father's estate until 1931 or 1932, and no formal accounting thereof has ever been made to him.

During petitioner's minority, his guardian, upon application to the court, was granted authority to join with his mother and the other children in the sale of two parcels of real estate. At or about the time of his attaining his majority, petitioner married, and thereafter, with his wife, executed 10 or 11 deeds with the other parties in interest conveying other parcels of real estate obtained by devolution from the testator. Checks constituting the proceeds of these sales were all endorsed by the grantors in the transactions to the widow respondent, who deposited the checks in various banks in accounts entitled

"Theresa Schwartz, Trustee", "Theresa Schwartz, Executrix", and on some occasions in her individual name. The last conveyance appears to have been made in the year 1924.

Petitioner asserts that he also, during his minority, turned over to respondent his earnings which were, he alleges, from $3 to $8 per week.

As against all these alleged charges, petitioner avers that he failed to receive the balance of the award in his favor in the adjudication of March 1907, and that he has received but approximately $5,000 from his mother, the respondent, from the proceeds of the sale of the real estate and other transactions, the last payment being in the year 1934.

In 1933, petitioner signed an acknowledgment to having received from respondent $4,700, "as an advance payment to me from the share that may be due to me under the will of my father . . .".

On April 28, 1934, petitioner filed in the Court of Common Pleas No. 2 of Philadelphia County his bill in equity against respondent, averring the existence of an inter vivos trust involving the funds in his mother's hands and demanding an accounting therefor. Respondent moved to dismiss the bill on the ground that exclusive jurisdiction of the controversy lay in the orphans' court and not in the common pleas. This motion was dismissed. The Supreme Court sustained the action of the lower court on November 26, 1934 (Schwartz v. Schwartz, 316 Pa. 318). Thereafter, on March 31, 1936, following a hearing on bill, answer, proofs and exceptions, Gordon, P. J., dismissed the bill without prejudice to petitioner's right to institute appropriate proceedings in this court. Judge Gordon found as a fact that the dispute between the parties did not arise out of an express trust inter vivos, and "by reason of the fact that the subject matter arises out of a decedent's estate wherein an accounting is sought both as to personalty and to real estate, that the ques-

tions involved could best be determined by the orphans' court." No appeal was taken from this decision.

On December 22, 1933, a citation was issued by this court, upon petitioner's application, directed to Theresa Schwartz, to show cause why she should not pay petitioner the award of $1,655.90 made by the adjudication of March 6, 1907, with interest thereon. Theresa Schwartz filed an answer averring payment and release, and suggesting the death of the coexecutor, Fred H. Hahn. Petitioner thereupon filed his replication joining issue. Thereupon, the court appointed Henry C. Remick, Esq., as master to take testimony and report his findings of fact and conclusions of law, and his recommendations as to a decree.

On June 22, 1936, upon application of petitioner, this court awarded a citation to Theresa Schwartz to show cause why she should not account for petitioner's share in the real and personal estate of Charles Schwartz, deceased. Theresa Schwartz thereupon filed preliminary objections to the petition averring a lack of jurisdiction in this court. On December 3, 1936, Henry C. Remick, Esq., was appointed master to hear and receive testimony concerning the real estate of which Charles Schwartz, deceased, was seised at the time of his death and the proceeds therefrom, subject, nevertheless, to any objection made by Theresa Schwartz, surviving executrix.

The master, after many hearings and unsuccessful attempts to reconcile the controversy, filed his report recommending the granting of the petition upon the executrix to account, and the dismissal of the petition for an order to pay the amount of the award. Respondent has filed exceptions to the first of these recommendations, while petitioner has excepted to the second recommendation of the master. We shall deal with these conclusions in inverse order.

To support the recommendations that the petition for order to pay should be dismissed, the master refers to the

record of payments by respondent totaling $4,700 plus, acknowledged by petitioner as "an advance payment . . . . from the share that may be due me under the will of my father". However, the record is devoid of evidence of specific voucher covering this item and we cannot regard the receipt above referred to, executed by petitioner, as conclusive of the payments made being in discharge of the award made in the adjudication of 1907. It also appears in the master's discussion of the question of jurisdiction of this court, and the fact is amply supported by the testimony, that the proceeds of the sale of the real estate were commingled by the executrix with the personal estate and that it cannot be determined whether the amounts received by petitioner were on account of his share in the personalty or of the proceeds of the real estate. It is apparent, therefore, that the finding of the master that the amount of the award has been paid is not supported by the record, and must be set aside: Nixon's Estate, 104 Pa. Superior Ct. 506. Whether the award has been paid is, therefore, an open question which can only be resolved by respondent accounting for the whole fund, both real estate and personalty. Petitioner's exception is sustained.

The finding of Gordon, P. J., in the equity proceeding in Court of Common Pleas No. 2, that the issue between the parties did not involve an express trust inter vivos, we regard as rendering this aspect of the case res adjudicata: Dyer's Appeal, 3 Grant 326; McClain's Estate, 180 Pa. 231. It is clear that the issue involves the same parties and the same controversy. However, our record reveals, as found by the master, evidence by petitioner and his wife, ineffectually denied by respondent, that the latter received in different capacities, namely, as executrix, trustee, and individually, all of the proceeds of the sales of testator's real estate with the understanding expressed or otherwise that she would enjoy such proceeds for her life and that upon her death, petitioner would receive "some money".

What should have been done, but was not done, was for the widow to file a bond protecting the remaindermen after the termination of the life interest: Act of May 17, 1871, P. L. 269, reënacted by the Fiduciaries Act of June 7, 1917, P. L. 447, sec. 23.

It is further manifest that respondent as executrix had no duty to account as executrix nominatim for the proceeds of real estate, there having been no power conferred upon her by the will concerning the real estate, and her election to take against the will having terminated whatever trust was created for her therein: Pennsylvania Company's Appeal, 168 Pa. 431; Kelley's Estate, 297 Pa. 17.

Nevertheless, while the situation involves no express trust, testamentary or inter vivos, there is some form of trust existent. The question is whether an accounting of such trust should now be required in this tribunal.

The Act of June 26, 1931, P. L. 1384, gives orphans' courts jurisdiction over the "control, removal, discharge, and settlement of accounts of trustees of trusts inter vivos".

In Shaffer's Estate, 21 D. & C. 90, wherein Judge Sinkler reviewed our jurisdictional limitations, we held that our jurisdiction is limited to that conferred by the statute which created the court and subsequent statutes which enlarged the jurisdiction thereof; that extension of the statutory jurisdiction must be strictly construed, and that the statutes did not expand our authority so as to take cognizance of trusts other than those created by written instrument.

In Schwartz v. Schwartz, supra, the Supreme Court sustained in a per curiam opinion the decision of Common Pleas Court No. 2, in the litigation between petitioner and respondent, that the common pleas courts have concurrent jurisdiction with that of the orphans' court of oral express trusts.

The facts in this case fail to disclose either an oral express trust or a testamentary trust. But other elements require an accounting.

Section 9(n) of the Orphans' Court Act of June 7, 1917, P. L. 363, confers on orphans' courts "The exercise of all other powers needful to the doing of anything which is or may be hereafter required or permitted to be done in said court, whether incidental to the powers hereinbefore enumerated or in addition thereto." This provision is reënacted in section 9(p) of the amendatory Act of 1931, supra. These acts are merely the legislative expression of what has apparently always been the judicial concept of the powers of this court, namely, that when its jurisdiction has once attached in any aspect of litigation we have to determine every incidental question standing in the way of distribution: Appeal of The Odd Fellows Savings Bank, 123 Pa. 356; Cutler's Estate, 225 Pa. 167; McGovern's Estate, 322 Pa. 379. See also opinion of the Supreme Court in Mellinger's Estate, 334 Pa. 180.

The record reveals two aspects of this case in which our court definitely has jurisdiction.

The first has been fully covered hereinbefore in sustaining petitioner's exception to the master's finding that the award in the adjudication has been paid. Therefore, on this score, an accounting is directed.

In the second place, it is quite clear that respondent received not only the proceeds of the real estate sold after petitioner attained his majority, but as well the proceeds of two parcels sold during his minority. While it might appear that petitioner fundamentally would have a right of action to compel his guardian to account for the failure to collect the proceeds of these sales, nevertheless, to prevent circuity of action, the law gives him a right to proceed in his own name against the executrix, the respondent. In Mulholland's Estate, 154 Pa. 491, it was held

that a ward could trace into his mother's hands funds of his estate—the proceeds of real estate sales—illegally appropriated by her. While petitioner ordinarily would have been barred by the lapse of time from proceeding against his guardian (Bones' Appeal, 27 Pa. 492), nevertheless, payments to petitioner as recently as 1934, in our opinion, have kept alive his right of action against her.

Under Mulholland's Estate, supra, it is also apparent that we now have authority to do what should have been done when these parcels of real estate, particularly those sold during minority of petitioner, were disposed of and the proceeds taken over by respondent, namely, to require her to post security for the benefit of the remaindermen, or to appoint a trustee for the administration of the fund. Obviously, only an accounting of these funds will reveal the amount of bond to be entered to secure the remaindermen.

Having jurisdiction on these two counts, we therefore assume jurisdiction over the whole case and direct that respondent must account. A suitable decree is attached.

Petitioner's exception to the master's recommendation to dismiss the petition to pay petitioner the award under the adjudication of March 6, 1907, is sustained, and respondent's exceptions to the master's recommendation of the entry of the decree requiring respondent to account are dismissed, and thus modified, the master's report is affirmed.

## Decree

The petition of Charles Schwartz directed to Theresa Schwartz to file an account is hereby granted and the said Theresa Schwartz is directed to file her account of the real and personal estate, and the proceeds from the sale thereof, of which Charles Schwartz was seized at the time of his death, within 30 days from the date hereof.

Stearne, J., did not sit.