## Fink's Estate.

*Decedents' estates—Executors' or administrators' accounts—Surcharge property of decedent—Orphans' court—Jurisdiction.*

The orphans' court has full power to inquire into and determine all questions standing directly in the way of the conversion and distribution of the property of a decedent, if at testator's death the property is shown to have been in his possession, or if for any other reason it was presumptively his. In such case, the mere denial of his ownership, unsupported, will not oust the court of its jurisdiction, but the court may proceed with the investigation so far as to inform itself whether the denial is made in good faith and a substantial dispute exists.

Where, in a hearing before the orphans' court, abundant evidence was produced to establish that several articles, with the value of which the accountant was surcharged, had been undoubtedly in the personal possession of the decedent, and that although she was a married woman she had been engaged in the management of her affairs, which reasonably accounted for the ownership in her own right of the articles in question, the jurisdiction of the orphans' court to dispose of the matter in controversy will be sustained, and a decree surcharging the administrator with the value of the articles erroneously omitted from the account will be affirmed.

Since the passage of the Acts of 1887 and 1893, relating to the rights of a married woman, the possession of personal property by a wife raises the same presumption of ownership by her that would exist in other cases. Notwithstanding the fact that a married woman lives with her husband, she may own and possess property of her own and that possession carries with it every incident that would follow the like possession by any other individual.

Argued April 20, 1921. Appeal, No. 135, April T., 1921, by Levi Fink, Administrator, from decree of the O. C. Westmoreland Co., Feb. T., 1920, No. 219, dismissing exceptions to adjudication in the Estate of Mary A.

Fink, deceased. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Exceptions to adjudication. Before BEACOM, P. J.

The court surcharged the accountant with certain items which he had neglected to set forth in his account. On exceptions to the adjudication the court dismissed the exceptions in the following opinion:

The first exception is to the surcharge of $327 which represents the amount of money which decedent gave her daughter to place in a bank for her a short time previous to her death together with the interest on same paid by the bank. It is undoubtedly the law now that money in the possession of a wife at the time of her death is presumed to belong to the wife. It has been repeatedly held that money on deposit in the name of the wife is presumed to be her property and the burden is on the husband or any one claiming otherwise to prove it. Under the evidence this money was in the wife's possession and given to another to deposit for her. It should have been deposited in the bank in her name instead of the name of the agent as a special deposit and the fact that it was not so deposited would not change the title to it. The first exception is therefore dismissed.

The second exception is dismissed for the same reason. The $27 was found in the purse of the decedent and there is no evidence to overcome the presumption that it was her property.

The third, fourth and fifth exceptions may be considered together. These exceptions all go to the surcharge of the accountant with the value of certain articles of personal property which the evidence shows were bought and paid for by decedent. Here again the presumptions are all against the exceptant and no proof is offered to rebut these presumptions. The case of Gongaware's Est., 265 Pa. 512, is in point: "As between people who live together, ownership of the place raises no pre-

sumption that the personal property thereon belongs to one rather than another. He who pays for an article is presumed to be the owner." These principles apply now as between husband and wife the same as other people and there can be no inference under the testimony in this case that decedent was acting as the agent of her husband in the purchase of any of the articles surcharged. The undisputed evidence is that the decedent had some estate of her own and also that she was a dealer in cows and perhaps other things. Wives now can acquire some estate without much capital to start on. Indeed the husband may give the wife a start by presenting her with some live stock and allowing her the increase from the same. "A wife is entitled to the avails of her separate property, though the labor of her husband mingles in the production": Martin v. Davis, 30 S. C. 59. It may be added, too, that: "The strict proof required by a wife in a contest between her and her husband's creditors is not required in a contest between her and her husband or his heirs": P. & L. Dig., Col. 13696. The third, fourth and fifth exceptions are dismissed.

The sixth exception is also dismissed. The evidence is that there were two separate lots of chickens on the place and that one lot was kept at the house and the other lot at the barn. Decedent claimed the lot at the house and made this claim in the presence of the exceptant who acceded to her claim or at least did not deny it. There is no dispute as to the number or value of these chickens and no other evidence on the subject.

As to the seventh exception there is little that can be added to what was said when the account was distributed. The fancy quilts were all wrought by the hand of the decedent, some of them, at least, during the years preceding her marriage to the exceptant and there is no effort to prove that they were not the sole and separate property of the decedent. Some of them were in her possession at the time of her death. Just how many is not made very clear by the testimony and the accountant

was surcharged with the smallest number mentioned. The theory that any of them were given to the accountant before her death is hardly supported by the evidence.

In conclusion it may not be amiss to add that the administrator has delayed the settlement of this estate beyond all reason and did not file an account at all until cited by the court to do so. If, under these circumstances, his contentions have not met with as much favor as he imagines he is entitled to he should not complain.

And now, January 29, 1921, the exceptions are all dismissed.

*Error assigned,* among others, was the decree of the court.

*B. H. Thompson,* for appellant.—The orphans' court was without jurisdiction to determine the question of title to personal property as between the appellant and the estate of the decedent: Cutler's Est., 225 Pa. 167; Paxson's Est., 225 Pa. 204; Williams's Est., 236 Pa. 259.

*C. B. Hollingsworth,* for appellee, cited: Qualters's Est., 147 Pa. 124; Crosetti's Est., 211 Pa. 490; Morrison v. Nipple, 39 Pa. Superior Ct. 184; Nuding and Schlouch v. Urich, 169 Pa. 289; Frost v. Knapp, 10 Pa. Superior Ct. 296.

OPINION BY HEAD, J., July 14, 1921:

The decree appealed from is in no way out of harmony with the doctrine of Cutler's Est., 225 Pa. 167. Nor is that case, in principle, at all different from the later case of Gongaware's Est., 265 Pa. 512. Keeping in mind the question raised by the facts in the former of the two cases cited and those in the case at bar, we find in the opinion of Mr. Justice STEWART a clear statement, not only of the principle that controlled the decision there rendered, but also a plain definition of the principle that must

apply when the facts are those found by the orphans' court in the present case.

In Cutler's estate the personal property in question had indisputably belonged to the deceased father. His daughter, who was his sole executrix, had received these securities as her father's agent and receipted for them in that capacity. She omitted these securities from the inventory of the father's estate filed by her as his executrix and later from her account. Her contention was that the omitted items were her own individual property; that the money and securities involved had been given her by the testator in his lifetime; and in support of her claim she presented several written and sealed instruments transferring the property to her by way of gift. The deceased therefore plainly did not die in the possession of the personal property in question. At the time of his death that physical possession was in another who claimed it as her own. In holding that the orphans' court was without jurisdiction to try and determine her title to that personal property, the Supreme Court in effect held that she could not thus be coerced into a surrender of her right to a trial by jury.

But in a case like the one before us, where the deceased was in actual physical possession of personal property at the time of her death, the law relates that possession to the title and ownership of the property, and the burden is upon him who claims that the ownership is in another to support his claim by the preponderance of the evidence. So it was said by Mr. Justice STEWART: "It is a doctrine equally familiar that once the jurisdiction attaches the court has full power to inquire into and determine all questions standing directly in the way of a conversion and distribution of the property, that is, the property of the decedent......if at testator's death the property is shown to have been in his possession, or if for any other reason it was presumptively his, a mere denial of his ownership unsupported will not oust the court of its jurisdiction, but the court

may proceed with the investigation so far as to inform itself whether the denial is made in good faith and a substantial dispute exists."

Upon abundant evidence the court below found that the several articles, with the value of which the accountant was surcharged, had been undoubtedly in the personal possession of the decedent. For some years before she married she had been a domestic in the family of her future husband and the latter had become indebted to her in a considerable sum for the services she had rendered. This indebtedness was freely recognized and acknowledged and was finally discharged by the husband by the purchase of a small farm which was conveyed to the wife. It is in evidence that, to some extent at least, she bought and sold cows on her own account. She sold a right of way through her property and in other ways reasonably accounted for the ownership in her own right of the articles in question. Since the Acts of 1887 and 1893, possession of personal property by a wife raises the same presumption of ownership by her that would exist in other cases. Against all of the evidence offered to support the title in the wife, apart from the legal presumption that would be sufficient, if not overthrown by proof, the husband administrator answered nothing. His learned counsel must rely entirely on the old common law proposition that during coverture a wife could have no possession even of personal property apart from her husband. But the situation that then existed has been entirely changed by the statutes we have referred to until now it must be clear that, notwithstanding the fact a married woman lives with her husband, she may own and possess property of her own and that possession carries with it every incident that would follow the like possession by any other individual.

Upon a review of the whole case, we are satisfied the appellant exhibited no substantial dispute as to the ownership of the property in question and the orphans' court was correct in its conclusion that it had complete

jurisdiction to dispose of the entire controversy. The assignments of error must therefore be dismissed.

Decree affirmed.